IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sherman Dewalt, #326410, | ) | C/A No.: 1:14-2335-MGL-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Sherman Dewalt ("Petitioner") is an inmate at the McCormick Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 15, 16]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by December 4, 2014. [ECF No. 17]. After obtaining an extension [ECF Nos. 19, 20], Petitioner filed a response to the motion [ECF No. 22], to which Respondent filed a reply [ECF No. 23].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

According to the facts presented by the solicitor during the plea hearing, Petitioner and the victim, Davita Roseboro ("Roseboro"), had been romantically involved, but the

relationship ended. [ECF No. 15-3 at 17]. On July 21, 2003, at 4:45 a.m., Petitioner pulled up to Roseboro's house. *Id.* at 18. Roseboro and her three children were sleeping in a locked bedroom. *Id.* at 19. Roseboro's children stated they heard someone knocking on the front door, and at some point Roseboro attempted to make a phone call, but the phone did not work. *Id.* at 18–19. Petitioner kicked in the front door and came into the house. *Id.* at 19. Petitioner then busted open the bedroom door and Petitioner had a gun in his hand when he entered the bedroom. *Id.* at 19–20. Roseboro asked Petitioner why he was there and asked him to leave, and Petitioner told Roseboro he was going to kill her. *Id.* at 20. Petitioner asked Roseboro to get out of the bed and when she did not, Petitioner shot her and ran out of the house. *Id.*

Petitioner was indicted by the Fairfield County grand jury during the October 2003 term of court for: (1) murder (2003-GS-20-389) [ECF No. 15-2 at 98–99], and (2) first degree burglary (2003-GS-20-390) [ECF No. 15-4]. He was represented by Jack B. Swerling, Esq., and pled guilty to the charges on January 28, 2008, before the Honorable Kenneth G. Goode, Circuit Court Judge. [ECF No. 15-1 at 3–62]. Judge Goode sentenced Petitioner to 30 years for burglary and to life imprisonment for murder, suspended on the service of 30 years and five years' intensive probation, along with a permanent restraining order in contacting the victim's family. *Id.* at 61. Petitioner did not appeal his conviction or sentence. [ECF No. 1 at 2].

Petitioner filed an application for post-conviction relief ("First PCR") on September 11, 2008 (2008-CP-20-322). [ECF No. 15-1 at 63–70]. The PCR application raised the following claims: (1) "withheld information—miscarriage of justice," (2) "involuntary

plea—court lack subject matter jurisdiction," and (3) "ineffective assistance." *Id.* at 65. Petitioner claimed his lawyer failed to investigate critical facts and did not allow him to testify and that the solicitor never presented evidence of a gun. *Id.*

A PCR evidentiary hearing was held before the Honorable Roger M. Young, Circuit Court Judge, on August 25, 2009, at which Petitioner and his PCR counsel, Creighton Coleman, Esq., appeared. *Id.* at 76–97. On October 19, 2009, Judge Young filed an order of dismissal. [ECF No. 15-17 at 2–8].

On March 8, 2011, Petitioner filed a pro se motion pursuant to SCRCP 60(b), [ECF No. 15-2 at 7–41], and a motion pursuant to SCRCP 15(b), *id.* at 42–50. On June 2, 2011, Judge Young denied both motions. *Id.* at 62.

On or about June 7, 2011, Petitioner filed a motion for rehearing pursuant to SCRCP 59(a) and 59(e). *Id.* at 63–66. On July 13, 2011, Judge Young filed an order denying the motion for rehearing. *Id.* at 67–68.

On April 8, 2011, Petitioner filed a second PCR ("Second PCR") application (2011-CP-20-152), asserting claims of ineffective assistance of PCR counsel and violation of the 14th Amendment of the United States and South Carolina Constitutions, primarily complaining of the failure of PCR counsel to appeal from the denial of his First PCR pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991). *Id.* at 51–57.

On February 27, 2012, Petitioner had an evidentiary hearing before the Honorable Alison Renee Lee, Circuit Court Judge. *Id.* at 75–94. Petitioner was represented by Ernest Spong, Esq. *Id.*

On April 19, 2012, Judge Lee filed an order granting Petitioner a belated appeal of his First PCR. *Id.* at 95–97. Petitioner timely appealed from the denial of his First PCR. [ECF No. 15-8]. He was represented on appeal by David Alexander, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who filed a petition for writ of certiorari in the South Carolina Supreme Court [ECF No. 15-9], that raised the following issue: "Whether the PCR court correctly granted petitioner a belated appeal of the denial of his prior post-conviction relief application because of his attorney's failure to file an appeal, pursuant to *Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (S.C. 1991)?" *Id.* at 3.

Attorney Alexander also filed a *Johnson*[1] petition, in which he argued plea counsel was ineffective in advising Petitioner to plead guilty without having conducted an adequate investigation. [ECF No. 15-10]. Attorney Alexander petitioned to be relieved as counsel. *Id.* at 8. Petitioner filed a pro se response to the *Johnson* petition. [ECF No. 15-12]. On July 29, 2013, the South Carolina Supreme Court transferred Petitioner's appeal to the South Carolina Court of Appeals ("Court of Appeals"). [ECF No. 15-13 at 3]. On April 9, 2014, the Court of Appeals granted the petition for a writ of certiorari from Judge Lee's order, dispensed with further briefing, and conducted an *Austin* review of Judge Young's order,

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

denying the petition and granting counsel's request to withdraw. [ECF No. 15-14]. The remittitur was issued on April 25, 2014. [ECF No. 15-15].

Petitioner filed this federal petition for a writ of habeas corpus on June 9, 2014. [ECF No. 1-4 at 2].[2]

II.    Discussion

A.    Federal Habeas Issues

Petitioner asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**    Plea counsel was ineffective in derogation of petitioner's Sixth Amendment rights by advising petitioner to plead guilty without conducting an adequate investigation.

**Ground Two:**    Fraud (1) and (2): (1) trial counsel was ineffective for not specifically interviewing the victim's children prior to the guilty plea; (2) trial counsel was ineffective for not further investigating issues with potential contamination at the crime scene; (3) trial counsel should have explored his alleged claim that the medical examiners were biased; and (4) trial counsel failed to explain the difference between murder, voluntary manslaughter, and involuntary manslaughter.

**Ground Three:**    Mistake

**Ground Four:**    Whether plea counsel was ineffective in derogation of Petitioner's Sixth Amend. Rights by advising petitioner to plead guilty without conducting an adequate investigation.

[ECF Nos. 1 at 5–10, 1-2 at 1–15] (errors in original).

---

[2] The court received the petition on June 12, 2014, and docketed it on June 13, 2014. [ECF No. 1]. Because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The date stamp on the envelope containing the petition indicates that Petitioner delivered the petition into the prison mailing system on June 9, 2014. [ECF No 1-4 at 2].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

The moving party has the burden of proving summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by Fed. R. Civ. P. 56(c), set forth specific facts showing there is a genuine dispute for trial.

C.    Analysis of AEDPA Bar

1.    AEDPA's Statute of Limitations

Respondent moves for dismissal, alleging that the petition was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), made effective on April 24, 1996. Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). The AEDPA substantially modified procedures

for consideration of habeas corpus petitions of state inmates in the federal courts. One of

those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of

limitations for filing habeas petitions. Subsection (d) of the statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A)  **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review**;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  **The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection**.

28 U.S.C. § 2244(d) (emphasis added). Subsection (d)(1)(A) provides that the one-year

statute of limitations begins to run on the date the petitioner's conviction becomes final,

not after collateral review is completed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir.

2000). In South Carolina, a defendant must file a notice of appeal within ten days of his

conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his

conviction becomes final ten days after the adjudication of guilt. *Crawley v. Catoe*, 257

F.3d 395, 398 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is

affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina

Supreme Court. *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes final on the

7

expiration of the 90-day period to seek review by the United States Supreme Court from a state's highest court; *cf. Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002) (discussing procedure for district court's sua sponte timeliness analysis, noting limitations period begins to run when time for filing certiorari in the United States Supreme Court has elapsed).[3]

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999). "Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." *Crawley v. Catoe,* 257 F.3d at 399.

A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing

---

[3] The *Hill* court did not discuss whether the state court that had dismissed the petitioner's appeal was the state court of last resort.

fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Generally, federal courts use Fed. R. Civ. P. 6(a) in computing periods of time under 28 U.S.C. § 2244(d)(2). *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000).

In 2000, the Fourth Circuit held that the AEDPA's statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. The court found that equitable tolling applies only in "those rare instances where—due to circumstances external to the [Petitioner's] own conduct—it would be unconscionable to enforce the limitation against the [Petitioner]." *Harris*, 209 F.3d at 330. In 2010, the United States Supreme Court squarely considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. at 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitable tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (*quoting Pace*, 544 U.S. at 418).

Under § 2244(d), the state bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of

establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

2.    Petitioner Timely Filed His Federal Petition

The undersigned finds Petitioner timely filed his petition in this matter. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Petitioner did not seek review by the United States Supreme Court, the AEDPA's one-year statute of limitations began running "at the expiration of the time" for seeking direct review in state court. 28 U.S.C. § 2244(d)(1)(A). Petitioner's judgment of conviction therefore became final "when his time for seeking review with the State's highest court expired." *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

Petitioner was found guilty and was sentenced on January 28, 2008. [ECF No. 15-1 at 3–61]. Because Petitioner did not appeal his guilty plea, his conviction became final ten days later on February 7, 2008—when Petitioner's opportunity to file a notice of appeal to challenge his conviction and sentence expired. *See* Rule 203(b)(2), SCACR (notice of appeal must be filed within ten days of imposition of sentence).

Accordingly, Petitioner's one-year statute of limitations period began running the following day, on February 8, 2008. Petitioner's filing of his PCR application on September 11, 2008, tolled the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). When Petitioner filed his PCR application, 216 days had elapsed, leaving 149 days within which he could have timely filed his federal habeas petition. The statute of limitations

remained tolled until the Court of Appeals denied the petition on April 9, 2014. Petitioner timely filed this habeas action on June 9, 2014.

### D.     Habeas Corpus Standard of Review

#### 1.     Generally

Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

#### 2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and

11

procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a)    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

  (A)    the applicant has exhausted the remedies available in the courts of the State; or

  (B)    (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10 *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 847 (1999). This opportunity must

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b)      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,

14

is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has

failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495‑96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a

16

petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

    4.      Analysis

        a)      Procedural Bar

As an initial matter, Respondent argues Petitioner procedurally defaulted on most of his claims in Ground Two by failing to present them to the state courts. In Ground Two, Petitioner asserts that his trial counsel was ineffective in (1) not interviewing the victim's children prior to the guilty plea; (2) not further investigating issues with potential contamination at the crime scene; (3) not exploring Petitioner's claim that the medical examiners were biased; and (4) failing to explain the difference between murder, voluntary manslaughter, and involuntary manslaughter. [ECF Nos. 1 at 7; 1-2 at 4–9]. Petitioner also argues counsel's ineffective assistance of counsel shows that his guilty plea was not intelligently and voluntarily entered. [ECF No. 1-2 at 10–11].

Because these claims were not raised to or ruled upon in Petitioner's PCR appeal, they were not preserved for review. *See, e.g., Coleman*, 501 U.S. 722 (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996) (holding issues not presented to the state's highest court may be treated as exhausted if it is clear that the claims would be procedurally defaulted under state law if the petitioner attempted to raise them now); *Pruitt v. State*, 423 S.E.2d 127 (S.C. 1992) (holding issue must be raised to and ruled on by the PCR judge in order to be preserved for

review); *Plyler v. State*, 424 S.E.2d 477 (S.C. 1992); SCRCP 59(e) (providing avenue for any party to move to alter or amend a judgment); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009) (acknowledging same applied consistently and regularly in South Carolina after *Marlar v. State*). As a result, these claims were not properly presented to the South Carolina appellate courts, which would find them procedurally defaulted if Petitioner attempted to raise them now. Consequently, federal habeas review of the claims in Ground Two is barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Matthews v. Evatt*, *supra*.

b)      Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of the majority of the claims in Ground Two. In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Wainwright,* 433 U.S. at 88–91; *Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a

constitutional violation has probably resulted in the conviction of one who is actually innocent").

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate any cause for procedurally defaulting on these grounds. Petitioner had a guilty plea in which he raised no objection, had the opportunity for a direct appeal, a PCR hearing, and a PCR appeal in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve the issues. To the extent Petitioner argues his PCR counsel was ineffective [ECF No. 22 at 3–4], this argument is insufficient to constitute cause for procedural default or undue prejudice from an alleged constitutional violation. Petitioner cannot "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See Martinez v. Ryan*, 132 S. Ct. 1309, 1318–20 (2012).

Having failed to establish "cause," the court does not reach whether Petitioner was prejudiced. *See Kornahrens v. Evatt,* 66 F.3d 1350, 1359 (4th Cir. 1995) ("We are mindful . . . that in *Engle* [*v. Isaac,* 456 U.S. 107, 134 n.43 (1982) ], after finding that there was no cause for the default, the Supreme Court ended its inquiry, noting that because 'we conclude[d] that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.'"); *see also Breard v. Pruett,* 134 F.3d 615,

620 (4th Cir. 1998) (same).

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

The guilty plea colloquy reflects that Petitioner generally admitted the facts as recited by the Solicitor in Section I above. [ECF No. 15-3 at 23–24]. He admitted to all the facts except he claimed the children were not in the room and that he did not mess with the telephone. *Id.* at 24. Accordingly, Petitioner cannot show actual innocence, and therefore, the procedural bar applies to the majority of the claims in Ground Two.

> c)     Merits Review

> (i)     Grounds One, Three, and Four (B)

In Grounds One and Four (B), Petitioner alleges his counsel was ineffective in advising him to plead guilty without having conducted an adequate investigation. [ECF No. 1 at 5]. In Ground Three, Petitioner argues the PCR judge made a mistake in finding Petitioner's plea was freely and voluntarily entered and finding that Petitioner did not satisfy either requirement of the *Strickland* test. [ECF No. 1-2 at 11].

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and

(2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104–105; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of

21

fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103*, quoting Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

At the PCR evidentiary hearing, Petitioner testified he told his counsel that at the time of the shooting there was another man in the house and the children were not in the bedroom. [ECF No. 15-1 at 80]. Petitioner said counsel told him there was no evidence to support his story. *Id.* Petitioner stated he was entitled to some type of manslaughter plea and his counsel failed to negotiate such a plea. *Id.* at 81. On cross-examination, Petitioner admitted he told the judge he was satisfied with his counsel. *Id.* at 85. Petitioner testified no one promised him anything or threatened him to plea and his plea was of his own free will. *Id.* at 84–85. Petitioner stated he committed each offense and, for the most part, he substantially agreed with the facts presented by the solicitor. *Id.* at 84, 86.

Petitioner's counsel testified he had 36 years of criminal law experience and had handled numerous murder cases. *Id.* at 87. Counsel stated Petitioner had some mental issues and he had Petitioner evaluated. Petitioner was found competent and criminally responsible. *Id.* at 88. Counsel said Petitioner never denied the shooting and "the question was what were the circumstances surrounding the shooting." *Id.* at 89. Counsel testified manslaughter was not a very good option because, based on his investigation, the children were in the bed with the victim when she was shot. *Id.* at 90. Counsel stated there was no evidence there was anyone else in the room. *Id.* Counsel said it was Petitioner's decision to

plead to murder rather than take a chance of going to trial. *Id.* at 91. Counsel testified he discussed with Petitioner what he was waiving by taking a plea rather than going to trial. *Id.* at 91–92.

Petitioner's claims regarding his counsel were rejected by the PCR court, which found:

> The Applicant alleged Counsel was ineffective and failed [to] secure a voluntary manslaughter charge. The Applicant had the burden to prove his entitlement to such a charge and failed to do so. The Applicant also alleged his Counsel was ineffective where Counsel informed him the evidence did not support the Applicant's version of the story. Counsel testified he investigated the Applicant's account and found no evidence to support the presence of another man in the room rather than the children. This Court finds Counsel's testimony to be credible. This Court also finds the Applicant's testimony was not credible. As a result, this Court denies and dismisses both of these allegations.
>
> In addition, this Court finds the Applicant voluntarily waived his rights and entered a guilty plea. This Court finds the record conclusively demonstrates the trial judge informed Applicant of the maximum penalty of each of his charges, informed him of his right to remain silent, informed him of his right to a jury trial and other associated jury trial rights. The record also indicates the Applicant waived these rights. The Applicant also affirmed no one promised him anything, threatened him, or mistreated him in order to coerce a plea. Applicant also stated that he was pleading guilty freely and voluntarily. The Applicant further informed the court he was satisfied with the services of his lawyer.
>
> This Court further finds that Applicant has failed to carry his burden of proving that his guilty plea was not freely and voluntarily entered. The overwhelming evidence in the record and presented through the testimony of the witnesses at the hearing reflects that the plea was knowingly and voluntarily entered. The Applicant showed no reason why he should be allowed to depart from the truth of the statements he made during his guilty plea hearing. This Court finds the Applicant's testimony at the PCR hearing lacked credibility. Therefore, this Court finds that Applicant's guilty plea was freely and voluntarily entered and denies and dismisses this allegation.

> This Court finds that any and all other allegations raised at the hearing or in the application are without merit.
>
> Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Rather, testimony reveals Counsel's representation met and exceeded the reasonableness required in <u>Strickland v. Washington</u>; <u>Cherry v. State</u>. The Court finds that the Applicant cannot satisfy either requirement of the <u>Strickland</u> test.

[ECF No. 15-17 at 6–7].

As to Petitioner's claims in Ground One and Four (B), Petitioner has provided no evidence to show ineffective assistance of counsel. Although Petitioner alleged his counsel failed to properly investigate his case, the evidence presented to the PCR court does not support Petitioner's contention. Petitioner's counsel testified he: (a) investigated Petitioner's background and had Petitioner evaluated for competency and criminal responsibility [ECF No. 15-1 at 88–89]; (b) investigated the background Petitioner had with Roseboro and he also interviewed Petitioner's family, *id.* at 88–91; and (c) investigated the circumstances surrounding the shooting to determine if there were any facts to support a manslaughter jury charge or any "mental defenses," *id.* at 89–90. Counsel explained his investigation did not reveal any evidence to support Petitioner's claim that there was someone else in the bedroom at the time of the shooting. *Id.* at 90. In light of the evidence presented during the PCR hearing, the undersigned finds the PCR court made reasonable findings of fact and reasonably applied federal law in denying Petitioner's ineffective assistance of counsel claim.

As to Petitioner's allegations in Ground Three concerning his guilty pleas, the record shows Petitioner chose to enter a plea of guilty, freely and voluntarily. *Little v.*

*Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *U.S. v. Futeral*, 539 F.2d 329 (4th Cir. 1976). At his plea hearing, Petitioner stated he understood the charges he was facing; that he faced a potential punishment of 30 years to life for murder and 15 years to life for first degree burglary; that his constitutional rights included his right to remain silent, right to a jury trial, right to confront witnesses; that his entering guilty pleas means that he admits the truth of the charges against him; that no had promised him or forced or threatened him to induce the plea; and that he was entering guilty pleas voluntarily, of his own free will. [ECF No. 15-3 at 11–15]. The solicitor presented the facts of the State's investigation, *id.* at 17–24, with which Petitioner concurred, except as to the children being in the room and his messing with the telephone, *id.* at 24. In light of the evidence presented, the undersigned finds the PCR court made reasonable findings of fact and reasonably applied federal law in denying Petitioner's involuntary guilty plea claim.

The PCR court's factual findings are based, in part, on its assessment that Petitioner's testimony was not credible, while counsel's testimony was credible. The PCR court's credibility determination is entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003) (quoting

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Petitioner has shown no cause to discount the PCR court's credibility determination and the undersigned can find no basis in the record on which to overturn the state court decision.

The PCR court reasonably applied *Strickland* in finding counsel did not render ineffective assistance of counsel. Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his involuntary guilty plea and ineffective assistance of counsel claims. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of these issues given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (holding that federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157–158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Accordingly, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief on Grounds One, Three, and Four (B) and the undersigned recommends that these grounds be denied and dismissed with prejudice.

(ii)    Grounds Two and Four (A)

In Ground Two, Petitioner alleges his counsel committed extrinsic fraud in his testimony at the PCR hearing. [ECF No. 1-2 at 4]. Specifically, Petitioner claims counsel's assertion he thoroughly investigated Petitioner's account of the shooting was not supported by the file he received from counsel. *Id.* Petitioner alleges there were no interview or investigator reports to show counsel interviewed the children, or that counsel questioned Roseboro's family and friends about another man being in the home during the incident. *Id.* at 4–5. In further support for his allegation that counsel misled the PCR court, Petitioner argues the potential contamination of the crime scene, the bias in the medical examiners' report, and counsel's failure to explain the difference between voluntary and involuntary manslaughter. *Id.* at 5–9. In Ground Four (A), Petitioner argues the PCR judge erred in denying his SCRCP 60(b) and 15(b) motions. [ECF No. 1-2 at 13–15].

Petitioner's allegations concerning his counsel's testimony during his PCR hearing and the PCR court's denial of his SCRCP motions are not cognizable on federal habeas review. The Fourth Circuit has held that alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the Petitioner's collateral proceeding does not enter into the habeas calculations. 28 U.S.C. 2254(i); *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also Bell-Bey*

27

*v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application.") (internal citations, quotation marks, and alteration omitted). Accordingly, the undersigned recommends that Petitioner's Grounds Two and Four (A) be denied and dismissed with prejudice.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 16] be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 27, 2015                                              Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.   Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*   Fed. R. Civ. P. 6(a), (d).   Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**   28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).